UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JENNIFER GARCIA,

        Plaintiff,

    v.

CENTRAL COAST RESTAURANTS, INC., et al.,

        Defendants.

Case No. 18-cv-02370-RS

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Jennifer Garcia filed this putative class action alleging various wage and hour violations under California state law by defendants. Two years ago, Silvia Contreras and Martha Valencia Lazaro sued the same defendants, alleging the same wage and hour claims, but under the California Labor Code's Private Attorneys General Act §§ 2698 *et seq.* ("PAGA"). Defendants recently settled with Contreras and Lazaro. Defendants now move for summary judgment, on the grounds that Garcia either must be compelled to arbitrate her claims or that Contreras and Lazaro's settlement precludes the ongoing litigation of this case. For the reasons set forth below, the motion is denied.

## II. BACKGROUND

Garcia alleges systematic deprivation of minimum and overtime wages, inadequate rest and meal breaks, failure to indemnify employees, failure to provide accurate wage statements, failure to pay wages owed upon termination, and violations of California's Unfair Competition Law during her tenure at a northern California "Jack in the Box" restaurant. She seeks back-pay

and other damages for herself and all others similarly situated.[1] Defendants—both California corporations engaged in the operation of the restaurants in the chain at issue—are no strangers to allegations of this sort. They have recently reached a settlement with two other former employees, also represented by Garcia's counsel, who filed a PAGA case alleging similar claims.

When Garcia began working for defendants on approximately May 20, 2015, she was seventeen years old. On her first day of work, she signed an At-Will & Arbitration Employee Acknowledgement and Agreement ("the Agreement"), which required binding arbitration of "any claim, dispute, and/or controversy…arising from, related to, or having any relationship or connection whatsoever" to her employment with defendants. Exhibit 3, Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Response"). She alleges being rushed through signing the paperwork, tricked as to its contents, and taken advantage of because she was a minor. Plaintiff Jennifer Garcia's Declaration in Support of Plaintiff's Response ("Plaintiff's Declaration") at 2–3. Garcia stopped working for defendants in April 2016 and turned eighteen years old in May 2016.

Meanwhile, in October 2015, two of defendants' other employees sued defendants in Superior Court in the County of Monterey. *See Contreras et al v. JIB Management, Inc. et al*, No. 15-cv-000143 (Cal. Super. Ct. filed October 21, 2015). *Contreras* makes claims similar to those in the present case: failure to pay minimum and overtime wages, failure to provide rest and meal periods, failure to indemnify employees, failure to pay wages due at termination, and failure to provide wage statements. The plaintiffs in both cases are represented by the same counsel. While the present case is a putative class action, the *Contreras* plaintiffs made their claims on behalf of the State of California pursuant to PAGA. The *Contreras* plaintiffs have recently reached a $400,000 settlement with defendants, which provides for payment to the California Labor and

---

[1] The putative class comprises "[a]ll persons who are employed or have been employed by Defendants in the State of California who, within four (4) years of the filing of the original Complaint in this action, have worked as non-exempt restaurant workers." Class Action Complaint at 22, Garcia v. Central Coast Restaurants, Inc., No. RG-17886551 (filed Dec. 13, 2017).

Workforce Development Agency ("CLWDA"), to the named plaintiffs, and to plaintiffs' attorneys for fees and costs. The remainder is to be allocated to aggrieved employees "as penalties and to recover underpaid wages as penalties." Order Granting Motion to Approve Penalties Sought as Part of a Settlement Pursuant to the Private Attorney Generals Act ("Settlement"), *Contreras*.

Garcia filed the present case in December 2017, approximately eighteen months after the termination of her employment with defendants. Her complaint disavowed "[a]ny employment-related documents, including any arbitration agreement(s) entered into by Plaintiff and Defendants…during the time Plaintiff was a minor." Class Action Complaint at 4, Garcia v. Central Coast Restaurants, Inc., No. RG-17886551 (filed Dec. 13, 2017). Garcia characterizes her disavowal as preemptive, however, and alleges she was unaware of having signed the Agreement until defendants filed their motion for summary judgment.

### III. LEGAL STANDARD

**A. Arbitration Standard**

When deciding a motion to compel arbitration, a standard similar to the summary judgment standard is applied. *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004). The question of whether parties agreed to arbitration is to be decided by a court, not an arbitrator, unless the parties clearly provide otherwise. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). Federal policy encourages arbitration, prohibiting state courts from treating arbitration agreements differently than any other contractual agreement. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 341 (2011). Doubts regarding the scope of arbitrable issues should thus be resolved in favor of arbitration. *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–47 (9th Cir. 2013).

When the question is not whether a particular *issue* is arbitrable but whether a particular *party* is bound by an arbitration agreement, however, this liberal policy is irrelevant. *Id.* The court must apply principles of contract law to arbitration agreements the same way it would to any other

contract. *Concepcion*, 563 U.S. at 343. Under California law, the essential elements for a contract are (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) "[a] lawful object;" and (4) "[s]ufficient cause or consideration." Cal. Civ. Code § 1550 (West 1999). If a motion to compel arbitration is opposed on the ground that no agreement was made, the benefit of all reasonable doubts and inferences should be given to the opposing party. *Concat LP*, 350 F.Supp.2d at 804. The formation of an arbitration agreement can only be decided as a matter of law when there is no genuine issue of material fact. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1141 (9th Cir.1991).

**B. Summary Judgment Standard**

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Those facts must be material, i.e., "facts that might affect the outcome of the suit under the governing law….Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255).

**IV. DISCUSSION**

**A. Arbitration**

Garcia does not dispute that she signed the Agreement on her first day of employment with

defendants, and that if the Agreement is valid, its scope would include her present claims. She contends, however, that the Agreement is unenforceable under three separate theories based in traditional contract law: fraud in the inception, disaffirmance of a contract signed as a minor, and unconscionability. Because Garcia's defenses raise genuine disputes of material fact, arbitration cannot be compelled at the summary judgment stage.

### 1. Fraud in the Inception

The California Supreme Court has held that, where fraud exists in the inception of a contract "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all." *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 415 (1996). When the party does not intend to enter into the contract, mutual assent—an essential element of contract formation—is lacking, and the contract is void. *Id.* at 415–16. The court cannot compel arbitration, because the very agreement to arbitrate is invalid. *Id.* The operative inquiry in determining whether a contract was created by fraud is whether a reasonable reader of the contract would have understood to what the parties were agreeing. *DKS, Inc. v. Corporate Business Solutions, Inc.*, 675 Fed.App'x. 738, 739 (9th Cir. 2017).

Here, Garcia's allegations raise questions on that score. She states that she has difficulty reading English, especially complicated words—of which there are plenty in the arbitration agreement. Plaintiff's Declaration at 2. She alleges that her manager rushed her through signing the paperwork, did not give her a copy to review later, and misrepresented the contents of the forms—in particular, Garcia says she was told the forms *informed* of her rights, not that they *waived* her rights. *Id.* at 2–3. Defendants counter that Garcia "misstates the evidence" and that Garcia's manager did not in any way mislead her. Accepting Garcia's version of events for purposes of this motion, it is entirely possible that a reasonable reader in her position would not have understood the nature of the contract's terms.

### 2. Disaffirmation

Under California law, an individual who enters into a contract as a minor but disaffirms it

within a "reasonable time" after reaching the age of majority has voided the contract. *See* Cal. Family Code § 6710; *Hurley v. Southern Cal. Edison Co.*, 183 F.2d 125, 132 (9th Cir. 1950). What is a "reasonable time" is to be evaluated on a case-by-case basis. *See Hurley*, 183 F.3d at 132. In all cases, the time to be evaluated for its reasonableness is the time between when the individual "discover[s]" the nature and significance of the contract and when the individual disaffirms it, *not* the time between signing and disaffirming. *Id.* (holding that a minor who disaffirmed a contract fifteen years after it was signed, but only two days after discovering its nature, had successfully voided the contract); *see also Lopez v. Kmart Corporation*, 2015 WL 2062606 (N.D. Cal. May 4, 2015) (holding that a minor who disaffirmed an arbitration clause in his employment contract via the filing of a class action complaint eighteen months after he signed the contract, and one month after his eighteenth birthday, did so within a reasonable time).

Here, the parties agree that Garcia signed her employment contract, including the Agreement, in May 2015 and that she reached the age of majority in May 2016. The parties disagree as to how much time elapsed between when Garcia discovered the nature and significance of the contract and when she disaffirmed it. Garcia claims she *prospectively* disavowed any arbitration agreement she might have signed in her December 2017 complaint, but she did not know about the definitive existence of *this* Agreement until defendants filed it as an exhibit to their present Motion for Summary Judgment; that is, she disaffirmed the Agreement *before* she discovered its significance. Defendants counter that Garcia must have known about the existence of the Agreement given her statements in the complaint and allusions to the existence of such a contract in a Joint Case Management Statement; that is, she knew what she was signing when she signed it, and she did not disaffirm it until eighteen months later.

Thus, the parties raise two genuine disputes of material fact. First, the parties disagree about when Garcia discovered the nature and significance of the Agreement: when she signed it, when defendants filed their Motion for Summary Judgment, or somewhere in the middle. Second, they disagree about whether the time that elapsed between when Garcia came to appreciate the nature and significance of the Agreement and when she disaffirmed it was "reasonable." At the

1   summary judgment stage, all facts must be construed in favor of the non-moving party. *Concat*

2   *LP*, 350 F.Supp.2d at 804. Accepting Garcia's version of events for purposes of this motion, there

3   exists a genuine dispute as to material fact, i.e. whether the Agreement is void.

4       *3. Unconscionability*

5           Under California law, a contractual clause is unenforceable only if it is both procedurally

6   and substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24

7   Cal.4th 83, 114 (2000); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006).

8   Courts apply a sliding scale: "the more substantively oppressive the contract term, the less

9   evidence of procedural unconscionability is required to come to the conclusion that the term is

10  unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114. Still, "both [must] be present in

11  order for a court to exercise its discretion to refuse to enforce a contract or clause under the

12  doctrine of unconscionability." *Id*.

13          Garcia alleges that the Agreement is procedurally unconscionable for many of the same

14  reasons she alleges fraud in the inception: her manager rushed her to sign the contract, did not give

15  her a copy for later review, and misrepresented the terms. Plaintiff's Declaration at 2–3. Insofar as

16  the agreement was "imposed on [Garcia] as a condition of employment and there was no

17  opportunity to negotiate," *Armendariz*, 24 Cal.4th at 115, her allegations support a finding of

18  substantial procedural unconscionability. They also raise questions as to substantive

19  unconscionability. *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1146 (2013) (citing

20  terms similar to those in the Agreement as evidence of substantive unconscionability). Given that

21  Garcia has presented evidence of both procedural and substantive unconscionability, there exists a

22  factual dispute as to the Agreement's validity. The facts are not so clear-cut as to any of the

23  asserted contracts defenses such that compelling arbitration at the summary judgment stage is

24  appropriate. Defendants' motion to compel arbitration must thus be denied.

25  **B. Res Judicata**

26          Res judicata, or claim preclusion, prevents parties from relitigating claims that have

27  already been decided. An action is barred under *res judicata* when: (1) a claim was raised, or

28

United States District Court
Northern District of California

could have been raised, in a prior action; (2) that prior action resulted in a valid final judgment on the merits; and (3) the parties in the present action are the same as, or in privity with, the parties in the prior action. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). The Superior Court in the County of Monterey has explicitly reserved judgment on the issue of whether the *Contreras* settlement will have preclusive effect. In their supplemental briefing, defendants request that judgment on the *res judicata* issue be stayed while they petition the Superior Court to reconsider, or that they be permitted to withdraw the argument altogether. Because it is not clear what effect a Superior Court reversal would have on the present action, however, and because the *res judicata* issue has been fully briefed, it is discussed here.

      *1. Same Claim*

California follows a "primary rights" approach to determine whether two causes of action are the same. *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1111 (9th Cir. 2018). This approach defines a "right" as the right to obtain redress for an injury, regardless of the legal theory asserted or the remedy sought; thus, "one injury gives rise to one claim for relief." *Id.* Defendants argue that, because Garcia claims the same violations of the labor code as did the Contreras plaintiffs, she is asserting the same primary right. Garcia, however, notes a subtle but important difference. While her putative class action was filed to redress the injuries of former employees of the defendants—being deprived of their wages and breaks, and other labor law violations—the *Contreras* case, and other PAGA actions, are filed *on behalf of the state of California*. PAGA actions exist primarily to remedy the injury sustained by the state when its labor laws are violated because it lacks the enforcement resources to prosecute every employer-offender. *See Villacres v. ABM Industries Inc.*, 189 Cal.App.4th 562, 578 (Cal. Ct. App. 2010). *See also Arias v. Superior Court*, 46 Cal.4th 969, 986 (2009) ("The [PAGA] employee plaintiff represents the same legal right and interest as state labor law enforcement agencies); *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal.4th 993, 1003 ("[PAGA actions

are] designed to protect the public, not to benefit private parties.").[2] The California Supreme Court reaffirmed as recently as this month that an employee bringing a PAGA action represents "the same legal right and interest as" state labor law enforcement agencies—*not* aggrieved employees. *ZB, N.A. v. Superior Court of San Diego* County, No. S246711, 2019 WL 4309684 (Cal. Sept. 12, 2019) (internal quotations omitted). Because Garcia seeks to remedy the injury sustained by former employees of defendants, while the *Contreras* plaintiffs sued to protect the state's interests—albeit with some incidental benefit to aggrieved employees—they are not asserting the same primary right.

### 2. *Prior Judgment*

The parties do not dispute that the Settlement is a valid final judgment on the merits for the purposes of claim preclusion.

### 3. *Same Parties*

In order to be precluded by a prior lawsuit, the parties in the present action must be the same as, or in privity with, the parties in the prior suit. Nonparty preclusion applies when (1) the nonparty was "adequately represented" in the prior action, or (2) the party in the present action acts as a proxy for a party in the prior action. *See Taylor v. Sturgell*, 553 U.S. 880, 895 (2008). Garcia is not in privity with the *Contreras* plaintiffs for the same reason that she is not asserting the same right that they were; the *Contreras* plaintiffs were representing the interests of the State of California, *not* of Garcia and other fellow employees. Garcia and other putative class members have not yet been given notice of the *Contreras* case, let alone the settlement; it is unclear how their interests could be represented by an action about which they may not have knowledge.

The parties' disagreement as to whether existing law governs this dispute further explains why *Contreras* is not preclusive. Garcia argues that *Arias v. Superior Court* is dispositive. The

---

[2] Further evidence that PAGA exists primarily to enforce a right of the state is that the California Labor Code provides for seventy-five percent of damages recovered pursuant to PAGA actions to be given to CLWDA and twenty-five percent to aggrieved employees. *See* Cal. Labor Code § 2699(i). It should be noted that the *Contreras* settlement, however, provides for about forty percent to aggrieved employees, ten percent to CLWDA, and the remainder to other parties.

California Supreme Court held in *Arias* that a PAGA action in which an employee prevails binds the defendant employer; "[n]onparty employees may…use the judgment against the employer to obtain remedies other than civil penalties for the same labor code violations." *Id.* at 987. *Arias*, however, as defendants rightly point out, contemplated a judgment of fault against the defendants, not a settlement agreement. This is significant because the *Contreras* settlement agreement clearly disavows any admission of fault by the defendants.

The parties also both point to *Villacres v. ABM Industries Inc.*, which held that a settlement in a class action precludes a future PAGA action alleging the same labor code violations. *Villacres*, 189 Cal.App.4th. at 578. However, in *Villacres*, contrary to the pending action, the initial case with the preclusive effect was a class action, while the estopped second case was a PAGA claim. This is significant because, while class actions require notice and an opportunity to opt-out be given to class members, so as to comport with the requirements of due process, PAGA actions do not. *See Arias*, 46 Cal. at 986–87 (holding that because PAGA actions do not require class certification procedures, they cannot be binding on nonparty employees bringing subsequent cases on the same claims, as they were not necessarily given notice of the initial PAGA claims). The *Contreras* settlement was approved only this past June, and nonparty employees, including Garcia, have not yet been given formal notice of the settlement. It would strain due process to limit Garcia's ability to bring her lawsuit because of the preclusive effect of a prior lawsuit of which no notice has thus far been provided.

Finally, the parties have provided additional briefing on *ZB, N.A. v. Superior Court of San Diego County*, in which the California Supreme Court held this month that aggrieved employees may not recover unpaid wages under PAGA. *ZB, N.A.*, 2019 WL 4309684 at *9. PAGA only authorizes private citizens to collect civil penalties on behalf of state labor agencies, the court reasoned, and unpaid wages are not civil penalties. *Id.* Nonparty employees must instead recover unpaid wages in a subsequent non-PAGA action. *Id.* at *11. To hold that the *Contreras* settlement is binding on Garcia would thus be to hold that there is no possible way for her to recover her unpaid wages, in obvious conflict with the California Supreme Court's suggestions.

Thus, putting aside whether *Arias*, *Villacres*, or any other California decision operates as binding precedent, it is clear that Garcia neither asserts the same primary right nor was she adequately represented by the *Contreras* plaintiffs. *Res judicata*, accordingly, does not limit her ability to proceed.[3]

## V. CONCLUSION

Genuine disputes of material fact exist as to whether arbitration can be compelled. Garcia's claims are furthermore not estopped by the *Contreras* settlement. Accordingly, for the reasons set forth above, defendants' Motion for Summary Judgment is denied.

**IT IS SO ORDERED**.

Dated: September 23, 2019

RICHARD SEEBORG
United States District Judge

---

[3] Defendants make several objections to the admission of Garcia's declaration. Objection 1 is overruled as defendants have provided no basis for it in the Federal Rules of Evidence. Objections 2, 3, 4, 5, 6, and 7 are overruled as they are not lay opinions or legal conclusions; they are Garcia's representations of her own state of mind at the time she signed the arbitration agreement.