UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER GARCIA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>CENTRAL COAST RESTAURANTS, INC., et al.,<br><br>　　　Defendants. | Case No. 18-cv-02370-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION** |

**I. Introduction**

This putative class action avers violations of California laws concerning meal periods and rest breaks by Defendants Central Coast Restaurants, Inc. ("CCR") and Yadav Enterprises, Inc. ("Yadav") in their operation of franchise Jack in the Box restaurants in Northern California. Proposed class representative and lead plaintiff Jennifer Garcia, who worked at a CCR-owned Jack in the Box restaurant in Salinas, California in 2015 and 2016, moves for class certification. She proposes two subclasses: one for employees who experienced meal period violations, and one for employees who experienced rest break violations. Defendants argue Plaintiff has failed to meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b). As explained below, issues concerning putative class members being bound by arbitration agreements do not render Garcia an inadequate or atypical class representative, as she may advance arguments against the validity of the arbitration clauses on a class-wide basis. In contrast, although Plaintiff has established commonality under Rule 23(a) and predominance under Rule 23(b) as to the proposed meal period

1  subclass, she has not established commonality or predominance as to the rest break subclass. The
2  motion for class certification is therefore granted as to the meal period subclass and denied as to
3  the rest break subclass.

## II. Background

### A. Factual Background

CCR operates approximately 20 franchise Jack in the Box restaurants in Northern California. Yadav is a subsidiary of CCR and does not operate restaurants, but rather provides administrative support such as payroll and human resources support. At CCR's restaurants, employees hold various positions that dictate their operational roles at the restaurant such as front counter, assembly or drive/thru. Employees are classified as either Team Leaders or Team Members. Both Team Leaders and Team Members fill the operational roles at the restaurant, but Team Leaders have supervisory roles as well. CCR's employment handbook contains a written statement of their meal period and rest break policy, which Plaintiff concedes complies with California law as written. Defendants maintain electronic timekeeping and payroll records, which document meal break and rest periods taken, as well as compensation for missed breaks.

At all points during the class period, CCR had a policy of entering into arbitration agreements with employees at their time of hire. Although CCR used three different arbitration agreements over the course of the class period, each arbitration agreement compelled arbitration for any claims brought by an employee arising from or relating to their employment with CCR. Defendants maintain that almost all employees signed these arbitration agreements. When Garcia was hired at age seventeen, she signed an arbitration agreement.

Garcia worked at a CCR-owned Jack in the Box in Salinas, California from May 2015 to April 2016. Although originally hired as a cashier, she testified in a declaration that she often had to help with other positions, as the location was frequently busy and under-staffed. Declaration of Jennifer Garcia ("Garcia Decl."), ¶ 3. Other members of the putative class similarly describe the CCR-owned restaurants they worked at in Watsonville, Gilroy, and Santa Cruz as understaffed. Declaration of Joel Chavarria Sanchez, ¶¶ 3, 6; Declaration of April Clark, ¶¶ 3, 7. Plaintiff avers

that because of understaffing, both she and other members of the putative class were denied proper meal periods and rest breaks. Plaintiff avers these denials were due to "workforce-wide practices and policies that facilitate and reward cost-cutting by managers at the expense of employees." Motion for Class Certification, at pg. 10.

**B. Procedural Background**

Garcia filed this wage and hour class action in December 2017 in Alameda County Superior Court, averring eight causes of action, including the meal period and rest break claims upon which she seeks certification.[1] Defendants removed the case to this Court in April 2018. Defendants' motion for summary judgment was denied in September 2019. In October 2020, this Court held an evidentiary hearing as to whether Plaintiff was bound by the arbitration agreement she signed, and concluded the agreement was void because she had signed it as a minor and disaffirmed it within a reasonable amount of time. The parties proceeded with discovery, and Plaintiff filed this motion for class certification on November 4, 2021.

**C. Proposed Class and Subclasses and Putative Class Claims**

Plaintiff seeks to certify a class and two subclasses. The classes and subclasses are defined as follows:

Global Class

Current and former non-exempt workers of Central Coast Restaurants, Inc., stores in California who worked between December 13, 2013, through the entry of final judgment in this action for all remedies obtainable for the meal and rest subclasses.

Subclass 1: Meal Period Subclass

Current and former non-exempt workers of Central Coast Restaurants, Inc., who worked at least one shift of five (5) hours or greater at any time between December 13, 2013, through the entry of final judgment in this action without a record of all

---

[1] The other causes of action included Failure to Pay Minimum Wages; Failure to Pay Overtime Compensation; Failure to Indemnify Employees for All Necessary Expenditures Or Losses Incurred; Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions; Failure to Pay All Wages Owed Upon Termination or Resignation; and Violation of Unfair Competition Law.

timely and proper meal period records.

Subclass 2: Rest Break Subclass

Current and former non-exempt workers of Central Coast Restaurants, Inc., who worked at least three and a half hours (3.5) or greater at any time between December 13, 2013, through the entry of final judgment in this action with records demonstrating the absence of timely and proper rest breaks.

Motion for Class Certification, at pg. 7.

The claims upon which Garcia seeks certification allege violations of California Labor Code §§ 226.7 and 512, and California Industrial Welfare Commission ("IWC") Wage Order 5. California Labor Code § 512(a) requires employers to provide employees with one 30-minute meal period, to begin no later than the end of the fifth hour of work, and another 30-minute meal period to begin no later than the tenth hour of work, for shifts of that length or longer. If the employer does not provide a compliant meal period, the employer must pay an additional hour of compensation at the regular rate of compensation. Cal. Lab. Code § 226.7(c). "An employer is liable only if it does not provide an employee with the opportunity to take a compliant meal period. The employer is not liable if the employee chooses to take a short or delayed meal period or no meal period at all." *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 78 (2021) (citing *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040-41 (2012)).

IWC Order 5 requires a rest period of ten minutes per four hours of work for shifts 3.5 hours or greater. Cal. Code Regs., tit. 8, § 11050. Like for missed meal periods, the employer must pay an additional hour of compensation at the regular rate if it fails to provide a compliant rest period. Cal. Lab. Code § 226.7(c).

### III. Legal Standard

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which represents more than a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended*

*by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). If all four Rule 23(a) prerequisites are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

### IV. Discussion

**A. Rule 23(a)**

Defendants argue that Plaintiff has not satisfied adequacy, typicality, or commonality. As Defendants have not contested numerosity, this requirement is considered satisfied, and not addressed below.

1. Adequacy and Typicality

Rule 23(a)(3), the typicality requirement, permits certification when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted).

Further, the adequacy requirement defined by Rule 23(a)(4) permits certification only when "the representative parties will fairly and adequately protect the interests of the class." To

1   assess whether representation meets this standard, the Court must consider two questions: "(1) Do
2   the representative plaintiffs and their counsel have any conflicts of interest with other class
3   members, and (2) will the representative plaintiffs and their counsel prosecute the action
4   vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

5   Defendants present two arguments that concern solely the adequacy requirement, and one
6   argument that concerns both the typicality and adequacy requirements. The two arguments that
7   only concern adequacy are addressed first. As for the third argument, which challenges Plaintiff's
8   adequacy and typicality using the same facts and reasoning, the Court will address adequacy and
9   typicality at the same time because "the typicality and adequacy inquiries tend to significantly
10  overlap." *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 5188682, at *12 (N.D.
11  Cal. Sept. 4, 2015).

12  First, Defendant argues Plaintiff has conflicts with other class members because the very
13  nature of Plaintiff's claims—that employees did not receive the required meal and rest periods—
14  depends on actions taken by supervisory employees, the Team Leaders, who are included in the
15  class. "The question whether employees at different levels of the internal hierarchy have
16  potentially conflicting interests is context-specific and depends upon the particular claims alleged
17  in a case." *Staton*, 327 F.3d at 958. When a supervisory employee seeks to represent the interests
18  of nonsupervisory employees as well, the employee "must offer evidence of coextensive interests
19  or at least allege the existence of a general [] policy," *id.* (internal quotation marks and citation
20  omitted), and this principle naturally extends to a nonsupervisory employee's attempt to represent
21  supervisory employees.

22  Here, Plaintiff has alleged a general policy of understaffing its restaurants, which would
23  affect Team Leaders as well as Team Members. Thus, both the supervisory and nonsupervisory
24  employees would have "coextensive interests." *See id*. Defendant points to cases in which district
25  courts have concluded in meal and rest period cases that a nonsupervisory plaintiff could not
26  adequately represent the interests of supervisors. *See Hughes v. Winco Foods*, No. ED CV11-
27  00644 JAK, 2012 WL 34483 (C.D. Cal. Jan. 4, 2012); *Hadjavi v. CVS Pharmacy, Inc.*, No. CV

28  ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION
    CASE NO. 18-cv-02370-RS

10–04886 SJO; 2011 WL 3240763 (C.D. Cal. July 25, 2011). In these cases, though, greater evidence of the supervisors' involvement in denying employees required breaks was presented. For example, in *Hughes*, the Plaintiffs "testified during their depositions that their Department Managers bore significant responsibility for their meal breaks not occurring within the first five hours of their shifts." [2] 2012 WL 34483, at *7. Defendants, in contrast, have not presented evidence indicating that the supervisors "bore significant responsibility" for the meal and rest hour violations, rather than Plaintiff's assertion that supervisors were forced to deal with the effects of a management-led policy of understaffing restaurants. Instead, Defendants argue that the relationship between Team Leader and Team Member creates "an insurmountable conflict of interest." Opposition to Motion for Class Certification, at pg. 12. *Staton* makes clear that the existence of an supervisor/supervisee relationship does not always create a conflict of interest. The general policy Plaintiff alleges of management-led understaffing and the coexisting interests of Team Leaders and Team Members, along with Defendants' failure to provide evidence of supervisors playing a key role in enforcing violations of meal and rest period requirements, means it is not a conflict of interest for Plaintiff to represent the interests of supervisors in the proposed class.

Second, Defendants argue that because Plaintiff did not raise the issue of adequacy of class counsel in her motion for class certification, her counsel is not adequate to represent the interests of the class. As discussed in her reply and a supporting declaration, though, proposed class counsel has litigated this case for four years, expending significant resources prior to reaching the class certification stage. Counsel also have experience litigating employment class actions. When

---

[2] In another case cited by Defendants, *Silva v. AvalonBay Communities, Inc.*, No. LA CV15-04157 JAK, 2016 WL 4251600, at *7 (C.D. Cal. April 20, 2016), it is unclear whether the district court relied on the supervisory relationship when concluding the plaintiff could not adequately represent the class. The court noted "Defendant argues that Plaintiff's plan to represent his supervisors creates a conflict of interest because Plaintiff alleges that his supervisors are partially responsible for his missed meal and rest periods," 2016 WL 4251600 at *7, but did not analyze this argument. Instead, the court provided other reasons for concluding the plaintiff could not adequately represent the class, such as how plaintiff possibly lied at his deposition, had little familiarity with the case, and violated a discovery order. *Id.*

considering the factors enumerated in Federal Rule of Civil Procedure 23(g)(1)(A), Counsel have demonstrated that they will adequately represent the interests of the class.

Third, Defendants challenge Plaintiff's adequacy and typicality to represent the class because she is no longer bound by an arbitration agreement. Defendants present two main arguments: (1) the Ninth Circuit does not allow a plaintiff not subject to an arbitration agreement to represent a Rule 23 class that includes individuals subject to arbitration agreements; and (2) Plaintiff lacks standing to challenge the arbitration agreements binding other members of the putative class because she is no longer a party to the agreement, and this inability to raise arguments as to the validity of arbitration agreements renders her atypical. Whether framed in terms of adequacy or typicality, Plaintiff's success in challenging her arbitration agreement, and that her minority afforded her arguments to disaffirm the arbitration agreement in addition to class-wide arguments against enforceability, does not defeat her ability to lead the proposed class.

Defendants point to two opinions in which the Ninth Circuit affirmed the denial of class certification, or decertified a class, when a lead plaintiff was not subject to an arbitration agreement, but the members of the putative class remained bound. *See Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021); *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018). In both cases, the Ninth Circuit held that a plaintiff who had opted out of an arbitration clause could not lead a class of people who had not opted out.[3] Defendants are correct that the Ninth Circuit has foreclosed the possibility of a plaintiff who opted out of an arbitration agreement from representing a class of people who are bound by the arbitration agreement, as has been noted by another court in this district. *See Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2018 WL 6727825, at *7 (N.D. Cal. Dec. 21, 2018). The Ninth

---

[3] A district court case cited by Defendants, *Farr v. Acima Credit, LLC*, 2021 WL 2826709 (N.D. Cal. July 7, 2021), similarly involved a proposed lead plaintiff who had opted out of the arbitration agreement. Defendants also cite to an unpublished Ninth Circuit memorandum disposition in which the Ninth Circuit found a plaintiff could not represent class members who had signed a class action waiver because those individuals "ha[d] potential defenses that [the plaintiff] would be unable to argue on their behalf." *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 Fed. Appx. 579, 579 (9th Cir. 2015).

1   Circuit, however, has not foreclosed the possibility of a plaintiff who successfully challenged an
2   arbitration agreement from representing a class of people bound by the same or similar arbitration
3   agreements.
4         There are significant differences between a plaintiff who opted out of an arbitration
5   agreement and a plaintiff who has successfully challenged an arbitration agreement. As another
6   court in this district has noted, a plaintiff who opted out of an arbitration agreement is unable to
7   make certain arguments on behalf of the class; in that case, the plaintiff was "unable to credibly
8   make several procedural unconscionability arguments on behalf of unnamed class members, such
9   as that delivery drivers felt compelled to accept the arbitration provisions as a condition of
10  employment or that the opt-out provision was not sufficiently noticeable." *Tan v. Grubhub, Inc.*,
11  No. 15-CV-05128-JSC, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016), *aff'd sub
12  nom. Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021). In contrast, Plaintiff has already
13  sought to make an unconscionability argument that would be applicable on a class-wide basis. *See*
14  Plaintiff's Opposition to Defendant's Motion for Summary Judgment. This Court found that
15  Garcia could disaffirm the contract based on her minority at the time of signing, and did not
16  address her unconscionability argument. Her successful disaffirmation based on her minority does
17  not weaken her other, class-wide arguments that remain unresolved. Thus, the concerns present in
18  cases in which a plaintiff opted out of an agreement are not present here.
19        Defendants point to one district court case in which a plaintiff successfully defended
20  against a motion to compel arbitration and was then determined not to meet the requirements of
21  adequacy and typicality, but this case is likewise distinguishable. In *Andrews v. Ring*, No. 5:20-
22  CV-00889-RGK-SP, 2020 WL 6253319 (C.D. Cal. Sept. 17, 2020), a district court denied a
23  motion to compel arbitration because Defendants had not sufficiently established that the plaintiff
24  had assented to the arbitration agreement. *Id.* at *3. In denying the motion to compel arbitration,
25  the court explained that the packaging on the product in question contained language stating that
26  someone who used the product was bound by the Terms of Service, and as the plaintiff had never
27  used the product, he was not bound by the arbitration clause in the Terms of Service. *Id.* That

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION
CASE NO. 18-cv-02370-RS
9

United States District Court
Northern District of California

plaintiff, however, was seeking to lead a class of people who purchased the product, which understandably would include a significant portion of people who used the product. The argument the plaintiff used to defend successfully against the motion to compel arbitration would thus not be applicable to a large portion of the class. In contrast, as mentioned before, Garcia presented arguments against the validity of the arbitration clause that would be applicable to the entire class, and thus *Andrews* is not persuasive.

Finally, Defendants' argument that Plaintiff lacks standing to seek to challenge the arbitration agreement on behalf of the class is unpersuasive. After all, the various Ninth Circuit cases—*Lawson*, *O'Connor*, and *Avilez*—addressing a plaintiff's ability to represent a class of people subject to arbitration agreements reach their conclusions based on the requirements of Rule 23(a), not whether the plaintiff has standing. This case also differs from *Andrews*, in which the district court noted in a footnote that the plaintiff did not have standing to challenge the enforceability of the arbitration agreement. *See* 2020 WL 6253319, at *4 n.2. In *Andrews*, the court found the plaintiff never entered into an agreement with the defendant. *Id.* In contrast, Garcia entered into an agreement with Defendants, which she was later able to disaffirm. Garcia has standing to challenge the arbitration agreement on behalf of the class.

2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class" in order to achieve certification. Plaintiffs must establish there is a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Plaintiff rests her argument for commonality on a recent California Supreme Court case, *Donohue v. AMN Services*, 11 Cal. 5th 58 (2021), which establishes a rebuttable presumption of liability when a defendant's records indicate meal break violations. As explained below, *Donohue* allows Plaintiff to establish commonality as to the meal period claims and corresponding subclass, but not the rest break claims and corresponding subclass.

In *Donohue*, the California Supreme Court explained that "an employer's assertion that an

employee waived a meal period 'is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief.'" 11 Cal. 5th at 75 (quoting *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J., concurring)). "Instead, the assertion is an affirmative defense, and the burden is on the employer, as the party asserting waiver, to plead and prove it." *Id.* at 75-76 (internal quotation marks omitted). The California Supreme Court explained that its choice to create a presumption was a practical one "deriv[ed] from an employer's duty to maintain accurate records of meal periods." *Id.* at 76. The court wished to prevent employers from receiving a "potential windfall from the failure to record meal periods." *Id.* at 75. As the presumption is a rebuttable one, a defendant may contest it by "presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work" via "[r]epresentative testimony, surveys, [] statistical analysis, [and] other types of evidence[.]" *Id.* at 77 (internal quotation marks and citation omitted).

As a threshold matter, Defendants argue *Donohue* applies to summary judgment, not the class certification stage. *Donohue*, however, held that the presumption applies to both the summary judgment and class certification stages. 11 Cal. 5th at 76 ("[T]he presumption goes to the question of liability and applies at the summary judgment stage, not just at the class certification stage."). District courts have applied the *Donohue* presumption when assessing class certification motions. *Meek v. SkyWest, Inc.*, No. 17-CV-01012-JD, 2021 WL 4461180, at *6 (N.D. Cal. Sept. 29, 2021); *Chacon v. Express Fashion Operations LLC*, No. 8:19-cv-00564-JLS-DFM, 2021 WL 4595772, at *8 (C.D. Cal. June 14, 2021).

First, Garcia has established that the rebuttable *Donohue* presumption applies in this case. Garcia has presented a report from Aaron Woolfson, which analyzes Defendants' records to produce a rate of meal period and rest break violations amongst employees at Defendants' restaurants. Among other estimates, Woolfson's report states that 100,772 shifts greater than five hours had no recorded meal period, or a meal period that was short or late, amounting to 18.64% of all shifts of that length. Amended Expert Report of Aaron Woolfson, at pg. 15. Defendants' expert provides a slightly lower estimate, 17.04% of that same metric. Rebuttal Expert Report of

1  Chen Song, Ph.D., at pg. 18. Even taking Defendants' lower estimate as true, that records show
2  17% of shifts show a possible meal period violation is sufficient to invoke the presumption from
3  *Donohue*.

4  Second, Defendants have not adequately rebutted the presumption at this stage to defeat a
5  showing of commonality. Defendants have presented five declarations from current employees
6  who say that when they did not take their meal periods that was their choice, or they received
7  appropriate compensation for the missed meal period. Reasons for not taking a meal period or rest
8  break included a preference to keep working through the break, concerns about losing energy, or
9  not having anyone to cover for them when the restaurant is busy. Declaration of Bereniz
10 Retamoza-Edeza, ¶ 10; Declaration of Brianna Perez, ¶ 4; Declaration of Yvonne Labuguen, ¶ 8.
11 *Donohue* states that an employer may rebut the presumption via "[r]epresentative testimony,
12 surveys, [] statistical analysis, [and] other types of evidence[.]" 11 Cal. 5th at 77. Yet, five such
13 declarations, when considering the thousands of potential members of the proposed class, can
14 hardly be considered representative and are insufficient to rebut the *Donohue* presumption at this
15 time.[4] Thus, for the purposes of class certification Defendants have not rebutted the presumption
16 from *Donohue*.[5] As the presumption applies, Plaintiff has demonstrated a "common pattern and
17 practice that could affect the class *as a whole*[,]" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,
18 983 (9th Cir. 2011) (emphasis in original), and has demonstrated commonality within the meaning
19 of Rule 23(a).

---

[4] Further, the declarations present reliability concerns, as all the declarations come from current employees. *See Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 269 (N.D. Cal. 2018) (noting in a wage and hour class action that the court was "reluctant to place significant weight on declarations of current AMN employees to deny class certification given the risk of bias and coercion inherent in such testimony").

[5] To the extent the Defendants argue that the rebuttal expert report shows that Defendants paid a significant number of premiums for missed meal periods, *see* Rebuttal Expert Report of Chen Song, Ph.D., at pg. 21, Defendants have accounted for a limited number of missed meal periods between 2018-2020, but have not provided adequate evidence to overcome the *Donohue* presumption. Dr. Song's report shows 2,489 missed meal penalty hours were paid over three years. This number accounts for only a small fraction of the shifts indicating meal periods violations in Defendants' records.

The Supreme Court's holding in *Donohue*, however, did not address rest break claims, and the inability to rely on *Donohue* as to those claims precludes certification on those claims. Unlike meal periods, employers are not under an obligation to record rest breaks. *See* Cal. Code Regs. tit. 8, § 11050 (requiring meal periods to be recorded, but explaining "rest periods need not be recorded"). The California Supreme Court did not address rest breaks in *Donohue*, and given the underlying logic of *Donohue*—not to reward employers for a failure to keep required records—there is no indication its holding would be extended to rest breaks as well.

Other district courts to apply the *Donohue* presumption in the context of certifying meal period claims have certified rest break claims without relying on any data-based presumption of violations. *See Meek*, 2021 WL 4461180, at *7; *Chacon*, 2021 WL 4595772, at *9. In *Meek*, the district court noted that declarations from both sides were "consistent on the point that rest breaks were not regularly provided[.]" 2021 WL 4461180, at *7. In *Chacon*, a rest break premium subclass was certified because the plaintiff presented adequate evidence that the Defendant had a "policy of shifting the burden to employees to request a premium[.]" 2021 WL 4595772, at *9. Unlike in *Chacon* and *Meek*, Garcia has not presented evidence sufficient to establish commonality as to the rest break claims without relying on *Donohue*.

To the extent Garcia argues that Defendants' alleged common policy of understaffing restaurants establishes commonality, Garcia has not presented enough evidence of such a policy to demonstrate commonality on that basis alone. Garcia focuses on Woolfson's data analysis, which she says shows a pattern of missed breaks, and a handful of declarations from former employees who worked at four of Defendants' restaurants, who state that the restaurants they worked at were consistently busy. Even when crediting this evidence, though, it amounts to no more than an assertion that a policy existed leading to missed breaks. Establishing commonality by relying on the existence of a policy requires more than just an assertion that a common policy existed. *See Ellis*, 657 F.3d at 983 ("If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class."). Such a policy may exist, but Garcia has presented insufficient evidence of it to use as the sole basis to establish

commonality for the rest break claims. Thus, Garcia's argument that she has established the existence of a common policy fails, and cannot support a finding of commonality.

In short, Garcia has demonstrated commonality as to the meal period subclass because of the existence of a presumption of meal break violations from the employers' records, as detailed in *Donohue*. That presumption does not extend to the rest break claims and subclass, and thus commonality is not established for that subclass.

**B. Rule 23(b)**

Plaintiff seeks certification under both Rules 23(b)(2) and 23(b)(3). Although certification under Rule 23(b)(2) is inappropriate for either the meal period subclass or the rest break subclass, certification under Rule 23(b)(3) is appropriate for the meal period subclass.

1. Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Plaintiff, without providing any caselaw in support, argues that Defendants' failure to provide breaks in accordance with California law, and failure to provide compensation for missed breaks, affected all members of the putative class in the same way. Defendants argue Plaintiff's claims for declaratory and injunctive relief are secondary to her claims for monetary damages, and thus Rule 23(b)(2) certification is inappropriate. Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360-61. Further, Rule 23(b)(2) does not require notice and opportunity to opt-out of the class, and "[i]n the context of a class action predominately for money damages . . . [the] absence of notice and opt out violates due process." *Id.* at 363. In this case, monetary damages is the predominate form of relief for the class. Thus, certification under Rule 23(b)(2) is improper.

2. Rule 23(b)(3)

Certification under Rule 23(b)(3) is proper where the trial court "finds that the questions of

law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is "more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34. "The predominance inquiry is mainly concerned with the balance between individual and common issues." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc) (internal quotation marks and citation omitted).

Defendants largely repeat the arguments made concerning commonality when arguing that Plaintiff has not satisfied the predominance requirement of Rule 23(b)(3). For the meal period claims and subclass, the presumption under *Donohue* of liability of missed meal periods means that common issues will predominate over individual ones. Further, given the number of claims at issue in this case, class litigation is a superior mechanism for resolving the meal period violation claims of class members. In contrast, for the rest break claims and subclass, no such presumption of liability applies, and Plaintiff has failed to put forth adequate evidence of a common policy. Thus, for the rest break claims, the analysis will be highly individualized, and predominance is not satisfied.

## V. Conclusion

For all the foregoing reasons, the motion for class certification is granted as to the meal period subclass, and denied as to the rest break subclass. As the general class to be certified included both the meal and rest break period claims, only the meal period subclass is certified.

**IT IS SO ORDERED**.

Dated: March 4, 2022

_____
RICHARD SEEBORG
Chief United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION
CASE NO. 18-cv-02370-RS

15